United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-4071
_____

Global Network Technologies, Inc.,     \*

                                          \*

     Plaintiff - Appellant,        \*

                                          \*   Appeal from the United States

v.                                   \*   District Court for the

                                          \*   Western District of Missouri.

Regional Airport Authority of        \*

Louisville and Jefferson County,     \*

                                          \*

     Defendant - Appellee.        \*

_____

Submitted:  May 19, 1997
Filed:  September 4, 1997
_____

Before BEAM and LOKEN, Circuit Judges, and KYLE,[\*] District Judge.
_____

LOKEN, Circuit Judge.

The Regional Airport Authority for Louisville, Kentucky ("RAA"), issued an Invitation to Bid on a fiber optics network project at Standiford Field. Global Network Technologies, Inc. ("Global"), submitted a bid accompanied by a bid guaranty, consisting of an irrevocable standby letter of credit in the amount of $85,000 issued by

_____

[\*]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

Commerce Bank of Kansas City and payable to RAA as beneficiary. When Global was awarded the contract but could not obtain the requisite bonding, RAA drew on the letter of credit, and Commerce Bank honored the draw. Global reimbursed the Bank, as it was obligated to do, and then sued RAA for breach of warranty, fraud, conversion, and money had and received, alleging that RAA submitted a false signed statement in making the draw. The district court[1] agreed that the statement was inaccurate but dismissed Global's claims on various grounds. Global appeals. We conclude that RAA's statement was not inaccurate and therefore affirm.

RAA's Invitation to Bid included a package of Contract Documents relating to the technologically complex fiber optics network contract, including a lengthy Bid Form and written "General Conditions" governing the award and execution of the contract. The Bid Form contained two terms that the successful bidder must satisfy after acceptance of its bid but before execution of the final contract:

> In the event that this Bid is accepted by [RAA], the undersigned agrees to furnish all required bonds, insurance certificates and other documents, within ten (10) Calendar Days after the date a Notice of Award is given by [RAA]. Furthermore, if it is the successful bidder, the undersigned agrees to enter into a contract in the form contained in these Contract Documents within Thirty (30) Calendar Days after the date that a Notice of Award is given to such successful Bidder.

Consistent with this term, General Condition 30-05 required the successful bidder to furnish executed performance and payment bonds "[w]ithin ten (10) Calendar Days of receipt of the Notice of Award."

---

[1]The HONORABLE FERNANDO J. GAITAN, JR., United States District Judge for the Western District of Missouri.

The Contract Documents contained overlapping provisions calling for a bid guaranty to enforce these pre-contract terms. The Invitation to Bid provided:

> Each sealed Bid shall be accompanied by an irrevocable Bank Letter of Credit . . . to guarantee that if the Bidder's offer results in an Award, the Bidder will enter into the Contract within thirty (30) days after Notice of Award is given.

Paragraph 2 of the Bid Form required that a letter of credit accompany the Bid and provided:

> The letter of credit is to be forfeited if, in the event the Bid is accepted, the undersigned Bidder shall fail to execute the Contract and furnish satisfactory evidence of insurance and/or Performance and Material Payment Bonds under the conditions and within the time specified hereinafter . . . .

And General Condition 30-07 provided:

> Failure of the successful Bidder to provide acceptable bonds and insurance certificates and execute the Contract in accordance with the requirements outlined [above] shall be just cause for cancellation of the Award and forfeiture of the Bid Guaranty.

Read together, these Contract Documents unambiguously required each bidder to submit a letter of credit to guarantee *both* submission of the required bonds within ten days *and* execution of a final contract within thirty days.

Global submitted a Bid on RAA's Bid Form and accompanied the Bid with Commerce Bank's letter of credit, which provided that it was payable upon RAA's timely submission of a signed statement certifying that "Global Network Technologies, Inc. has failed to comply with the terms and conditions of the Invitation to Bid." On

-3-

June 6, 1995, RAA issued a Notice of Award accepting Global's Bid. However, Global could not obtain the required bonds within ten days. After further discussions, on June 29, RAA drew on the $85,000 letter of credit. Because RAA submitted the signed statement and other documents specified in the letter of credit before its expiration date, Commerce Bank honored the draw.[2]

In the district court and on appeal, Global acknowledges that it breached the General Conditions and the terms of its Bid by not providing the required bonds in ten days. Nevertheless, Global argues, RAA's draw on the letter of credit was wrongful because it falsely certified that Global had failed to comply with the Invitation to Bid. That document, Global explains, required a letter of credit payable if the successful bidder failed to sign the final contract within thirty days after receiving the Notice of Award. Because RAA drew on the letter of credit within thirty days after the Notice of Award, Global had not yet failed to comply with this condition. RAA's signed statement was therefore knowingly false.

We conclude that this interpretation of the letter of credit is far too cramped. Global would have us construe the credit as though it required a signed statement that Global had not signed the final contract within thirty days. But the term used in the credit was broader -- failure to comply "with the terms and conditions of the Invitation to Bid." The Invitation to Bid explicitly required that a letter of credit "accompany" Global's "sealed Bid." Paragraph 2 of the Bid required submission of a letter of credit payable upon either of two contingencies, failure to submit bonds within ten days or failure to sign a final contract within thirty days. In our view, the most natural

---

[2]An irrevocable letter of credit creates an independent obligation of the issuing bank to pay the beneficiary upon timely presentment of the documents specified in the credit. A standby letter of credit typically calls for a document reciting that the issuer's account party has defaulted on a contractual obligation. See State ex rel. Mo. Highway & Transp. Comm'n v. Morganstein, 703 S.W.2d 894, 898-99 (Mo. banc 1986); JOHN F. DOLAN, THE LAW OF LETTERS OF CREDIT ¶ 1.04, at 1-16 (rev. ed. 1996).

construction of the language used in the letter of credit is that its reference to "terms and conditions of the Invitation to Bid" included both of the bid guaranty requirements contained in the "sealed Bid."

It is obviously true that RAA's Contract Documents could have been drafted more precisely in this regard, since the Bid Form required a letter of credit covering two contingencies, whereas the Invitation to Bid specifically referred to a letter of credit covering one contingency. But even taking Global's view of the letter of credit, that its reference to the Invitation to Bid is a clear and unambiguous reference to only that one contingency, we are left under Missouri law with a case of latent ambiguity -- "where a writing on its face appears clear and unambiguous, but some collateral matter makes the meaning uncertain." A court must then consider parol evidence such as "subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties." Royal Banks of Missouri v. Fridkin, 819 S.W.2d 359, 362 (Mo. banc 1991).

Citing the independence of a letter of credit, Global argues that we may not look beyond the four corners of that instrument. Because of the issuing bank's independent commitment to honor its letter of credit, courts require that documents submitted with a draw comply precisely with the literal terms of the credit. See Anchor Centre Partners, Ltd. v. Mercantile Bank, N.A., 803 S.W.2d 23, 34-35 (Mo. banc 1991). That reduces the issuer's task to comparing the documents against its credit. But we are dealing here with a contract dispute between the letter of credit applicant and beneficiary after the issuing bank has honored its independent obligations under the credit. This dispute is between the parties to the underlying contract. The letter of credit's "independence" is less significant than the broader relationship between Global and RAA in resolving this dispute. Therefore, "the court should be able to look to the

underlying transaction to determine whether the beneficiary has performed the terms of the credit." DOLAN, supra, ¶ 2.09[6], at 2-55.[3]

In this case, all the parol evidence -- from the underlying Contract Documents to the parties' conduct following the Notice of Award to the deposition testimony in the summary judgment record -- demonstrate beyond doubt that RAA intended to require, and Global intended to submit with its Bid, a letter of credit meeting the two contingency requirements of paragraph 2 of the Bid. Therefore, when Global failed to submit the required bonds in ten days, RAA did not submit a false or inaccurate statement when it certified to Commerce Bank that Global "has failed to comply with the terms and conditions of the Invitation to Bid."[4] Because all of Global's claims are premised on RAA's statement being false or inaccurate, the district court correctly granted summary judgment dismissing those claims.

Finally, Global argues that the district court erred in denying its Fed. R. Civ. P. 59(e) motion to alter or amend the judgment. In that motion, Global argued either that RAA had waived the bonding requirement, or that Global was entitled to a refund of a portion of the letter of credit because it exceeded the minimum bid guaranty that RAA had required. "A district court has broad discretion in determining whether to grant a

---

[3]In addition, we are here construing the letter of credit to determine whether RAA submitted a false statement. This is different than the question considered in Holmberg v. Morrisette, 800 F.2d 205, 211 (8th Cir. 1986), cert. denied, 481 U.S. 1028 (1987), where we held that ambiguity in a letter of credit "could not provide a sufficient justification for submitting falsified documents."

[4]Even if the certification had been inaccurate, we agree with the district court that it was not fraudulent because, "[b]y drawing on the letter of credit with use of an inaccurate statement, the beneficiary did exactly what the applicant intended even though the beneficiary had to make an inaccurate statement to draw. Thus, we would argue that the draw is not 'materially fraudulent.'" WHITE & SUMMERS, UNIFORM COMMERCIAL CODE § 26-10 (4th ed. Supp. 1996), commenting on WKB Enters., Inc. v. Ruan Leasing Co., 838 F. Supp. 529, 533 (D. Utah 1993).

motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion." Hagerman v. Yukon Energy Corp., 839 F.2d 407, 413 (8th Cir.), cert. denied, 488 U.S. 820 (1988). The district court did not abuse its discretion in this case because a Rule 59(e) motion may not be used "to introduce new evidence that could have been introduced during pendency of the summary judgment motion," or to "serve as the occasion to tender new legal theories." Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993), cert. denied, 510 U.S. 1093 (1994).

The judgment of the district court is affirmed.


A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.