**ENGINEERED PRODUCTS CO., Plaintiff,**

v.

**DONALDSON COMPANY, INC., Defendant.**

**No. C 98–2106–MWB.**

United States District Court, N.D. Iowa, Eastern Division.

Sept. 20, 2004.

Craig J. Lervick, Cyrus A. Morton, Edward M. Laine, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Richard S. Fry, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Plaintiff and Counter Defendant.

Annamarie A. Daley, Robins Kaplan Miller Ciresi, Minneapolis, MN, Stephen J. Holtman, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for Defendant and Counter Claimant.

Christopher A. Seidl, Christopher J. Sorenson, Merchant & Gould, Minneapolis, MN, for Counter Claimant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO AMEND JUDGMENT AND PLAINTIFF'S MOTION FOR ATTORNEY FEES AND EXPENSES**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION .............................................. 976

II. LEGAL ANALYSIS .......................................... 978
 A. *Donaldson's Motion To Amend Judgment* ..................... 978
 1. *Arguments of the parties* .......................... 978
 2. *Applicable standards* ............................. 979
 3. *Analysis* ...................................... 980
 a. *Double recovery* .......................... 980
 b. *Improper enhancement* ...................... 980
 B. *EPC's Motion For Attorney Fees And Expenses* .................... 980
 1. *Arguments of the parties* .......................... 980
 2. *Attorney fees and expenses* ......................... 982
 a. *Applicable standards* ...................... 982
 b. *Analysis* ................................ 984
 3. *Expert witness fees* ............................. 986
 a. *Applicable standards* ...................... 986
 b. *Analysis* ................................ 988

III. CONCLUSION .............................................. 988

This matter comes before the court pursuant to what appears to be the final episode, at least in the trial court, of a long-running serial involving the plaintiff's claims of infringement of its patent for a progressive air filter restriction indicator. Like most "final" episodes of a serial, this one involves more than one plot line to tie up loose ends: One plot line involves the defendant's last ditch effort to amend at least part of an adverse judgment of over $15 million, and a second plot line involves the plaintiff's request for attorney fees and expenses, including expert witness fees, pursuant to 35 U.S.C. § 285, on the ground that this is an "exceptional case." Tempting though it may be to follow the lead of Hollywood by shifting unexpectedly between these plot lines to maintain a mood of high drama, the court will take the more mundane approach of playing out the two plot lines in turn. However, the court must first set the stage. Therefore, this episode begins with a familiar voice over: "As you remember, last episode...."

## I. INTRODUCTION

In *Engineered Products Co. v. Donaldson Co., Inc.*, 330 F.Supp.2d 1013, 2004 WL 1798296 (N.D.Iowa 2004) (*EPC V*), this court explained,

[T]his patent infringement action between plaintiff Engineered Products

Company (EPC) and defendant Donaldson Company (Donaldson) arises from Donaldson's creation and sale of two air filter restriction indicator devices that EPC contends infringe its U.S. Patent Number 4,445,456 (the '456 patent). EPC's '456 patent, which issued on May 1, 1984, and expired in 2001, is for a mechanical air filter restriction indicator with a lock-up feature. Such a device allows the operator of a vehicle with a combustion engine to see how much restriction is present in the engine's air filter, *i.e.*, how dirty the air filter is, without having to operate the vehicle at the same time. The accused devices are Donaldson's Air Alert, which is also called the "original GMT–800" in this litigation, and Donaldson's Next Generation Air Alert or NG Air Alert, which is also called the "NG GMT–800" in this litigation.

\* \* \* \* \* \*

On May 12, 2004, the jury rendered a verdict favorable to EPC on all issues before them. Somewhat more specifically, the jury found that the original GMT–800 and the NG GMT–800 each infringe the '456 patent, both "literally" and under the "doctrine of equivalents." The jury also found that the infringement by the original GMT–800 was "willful." Next, the jury rejected Donaldson's defenses of patent invalidity ("on sale" and "in use" bars) and patent misuse. Consequently, for infringement by the original GMT–800, the jury awarded EPC $5,269,270 in damages for lost profits (allocated as $3,826,889 for "lost sales" and $1,442,381 for "price erosion"), with an alternative award of $226,458 as a "reasonable royalty." For infringement by the NG GMT–800, the jury awarded $434,267 as a "reasonable royalty" for sales to Mack and Delphi and $31,194 as a "reasonable royalty" for sales to DAF, but no "lost profits" or "price erosion" damages. *See* Verdict Form (docket no. 398).

*EPC V*, at 1018–21. In *EPC V*, this court rejected Donaldson's defenses of obviousness-type double patenting, laches, and estoppel, which were tried to the court; denied Donaldson's post-trial motions for judgment as a matter of law and for new trial challenging the jury's verdict on various grounds; granted EPC's post-trial motions for pre- and post-judgment interest; and granted EPC's post-trial motion for enhanced damages pursuant to 35 U.S.C. § 284 based on the jury's finding of "willfulness." *See id.* at 1047–49 (stating the specific resolution of the equitable defenses tried to the court and each post-trial motion considered therein).

In consequence, on August 12, 2004, judgment entered as follows:

The plaintiff, Engineered Products Co., recover against defendant, Donaldson Company, the following:

1) For infringement by the original GMT–800, $5,269,270 as los[t] profit damages awarded by the jury, trebled by the Court pursuant to 35 U.S.C. § 284 to the sum of $15,807,810.

2) For infringement by the Next [Generation] GMT–800, $465,461 as a reasonable royalty.

3) Prejudgment interest in the amount of $1,106,378 through May 11, 2004, plus such additional interest, at the same rate, as has accumulated from May 11, 2004, until entry of this judgment.

4) Post-judgment interest pursuant to 28 U.S.C. § 1961(a) and (b).

Judgment, August 12, 2004 (docket no. 464).

In the court's August 12, 2004, ruling, the court reserved for later disposition EPC's June 4, 2004, Motion For Attorneys' Fees And Expenses (docket no. 406). The

time is now ripe to resolve that motion. Also, on August 26, 2004, Donaldson filed its Motion To Alter Or Amend Judgment Pursuant To Fed.R.Civ.P. 59(e) (docket no. 466), which challenges certain portions of the August 12, 2004, Judgment.[1] The court concludes that resolution of the latter motion should logically precede resolution of the former, as some significant change in the judgment could affect the amount of attorney fees and expenses, if any, to which EPC is entitled. Therefore, the court's legal analysis will begin with Donaldson's motion to amend the August 12, 2004, Judgment.

## II. LEGAL ANALYSIS

### A. Donaldson's Motion To Amend Judgment

#### 1. Arguments of the parties

In Donaldson's Motion To Alter Or Amend Judgment, Donaldson contends that the August 12, 2004, Judgment grants an improper double recovery to EPC by awarding both lost profits and royalties for sales of the NG GMT–800 and miscalculates enhanced damages by improperly enhancing damages for sales of the NG GMT–800 as to which the jury made no "willfulness" finding. Donaldson argues that the court itself recognized that the jury found no lost profits as to the NG GMT–800; thus, Donaldson contends, it follows that the jury did not intend to award lost profits damages for Donaldson's sale of the NG GMT–800 in its lost profits calculation for the original GMT–800. Nevertheless, Donaldson contends that, based upon EPC's damages expert's calculations apparently accepted by the jury, some two-thirds of the nearly $4 million in lost profits awarded were actually based on sales of the NG GMT–800.

Donaldson argues that two errors flow from this erroneous inclusion of lost profits for sales of the NG GMT–800: (1) much of the award of lost profits is improperly duplicative of the reasonable royalty also awarded by the jury for infringement by the NG GMT–800; and (2) the court improperly enhanced damages for sales of the NG GMT–800, a product as to which EPC did not assert, and the jury did not find, "willful" infringement. Therefore, Donaldson requests that the court amend the Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to rectify these manifest errors.

In its response, EPC concurs in the need for clarification of the Judgment with respect to the reasonable royalty issue, but resists Donaldson's contention that there is any error in the Judgment concerning enhanced damages. EPC agrees that there is a clerical error in numbered paragraph 2 of the Judgment, because the jury's royalty award for infringement by the NG GMT–800 includes $434,267 for sales to Mack Truck and Delphi, which is an alternative to the lost profits award based on sales to those entities. However, EPC contends that the further award of $31,194 as a reasonable royalty for sales of the NG GMT–800 to DAF is not duplicative of any lost profits damages, because EPC did not seek, and the jury did not award, any lost profits damages for those sales. Therefore, EPC requests that numbered paragraph 2 of the Judgment be amended pursuant to Rule 60(b) of the Federal Rules of Civil Procedure to state the following: "For infringement by the Next [Generation] GMT–800, $31,194 as a reasonable royalty for sales to DAF." On the other hand, EPC contends that there is no error in the award of lost profits for infringe-

---

1. The court's crowded schedule, complicated by the commencement of a federal death penalty trial expected to last two or three months, has not permitted the scheduling of oral arguments on these motions, nor has the court found oral arguments to be essential to its resolution of these motions.

ment by the original GMT–800, and consequently no error in the enhancement of the entire lost profits award. EPC contends that the jury reasonably found, based on the evidence, that infringement by the original GMT–800 resulted in EPC's loss of profits on sales of both the original GMT–800 and the NG GMT–800. In short, but for the infringement by the original GMT–800, EPC contends—and the jury found—EPC would have made all of the sales that Donaldson made with either of its products. Thus, EPC contends that there is no double recovery within the jury's award of lost profits, no improper allocation of lost profits damages, and no improper enhancement of the lost profits damages attributable to infringement by the original GMT–800.

### 2. Applicable standards

██ Because a motion for relief under Rule 59(e) or 60(b) presents "a purely procedural question," the law of the regional circuit applies. *University of West Virginia, Bd. of Trustees v. VanVoorhies*, 342 F.3d 1290, 1294 (Fed.Cir.2003) (motion under both rules); *Minton v. National Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1378–79 (Fed.Cir.2003) (motion under Rule 59(e)); *Fiskars, Inc. v. Hunt Mfg. Co.*, 279 F.3d 1378, 1381 (Fed.Cir.2002) (motion under Rule 60(b)). Therefore, the court will review the standards for such motions in the Eighth Circuit.

██ Rule 59(e) of the Federal Rules of Civil Procedure, relied on by Donaldson, provides for alteration and amendment of a final judgment. *See* FED. R. CIV. P. 59(e) ("Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."). The purpose behind the enactment of Rule 59(e) was " 'to mak[e] clear that the district court possesse[d] the power to rectify its own mistakes in the period immediately following the entry of judgment.' " *Nor-*

*man v. Arkansas Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir.1996) (quoting *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982)). Rule 59(e) motions "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir.1998); *accord Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413 (8th Cir.), *cert. denied*, 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988). "A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, [and will not be reversed] absent a clear abuse of discretion." *Global Network Technologies, Inc. v. Regional Airport Auth. of Louisville and Jefferson County*, 122 F.3d 661, 665 (8th Cir.1997).

██ Rule 60(b), relied on by EPC in its partial concurrence, provides relief from a judgment on various grounds, including the catchall of "any ... reason justifying relief from the operation of the judgment." FED. R. CIV. P. 60(b) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons," including "any other reason justifying relief from the operation of the judgment"). However, "[a] district court should grant a Rule 60(b) motion 'only upon an adequate showing of exceptional circumstances.' " *United States v. Tracts 10 & 11 of Lakeview Heights*, 51 F.3d 117, 120 (8th Cir.1995) (quoting *United States v. Young*, 806 F.2d 805, 806 (8th Cir.1986), *cert. denied*, 484 U.S. 836, 108 S.Ct. 117, 98 L.Ed.2d 76 (1987)); *accord Brooks v. Ferguson-Florissant Sch. Dist.*, 113 F.3d 903, 904 (8th Cir.1997). Rule 60(b) is to be given a liberal construction so as to do substantial justice and " 'to prevent the

judgment from becoming a vehicle of injustice.' " *MIF Realty, L.P. v. Rochester Assocs.*, 92 F.3d 752, 755–56 (8th Cir.1996). A district court's denial of a motion for post-judgment relief under Rule 60(b)(1), like a ruling on a motion for relief under Rule 59(e), is reviewed for abuse of discretion. *See Richards v. Aramark Services, Inc.*, 108 F.3d 925, 927 (8th Cir.1997).

### 3. Analysis

#### a. Double recovery

■ The court agrees with the parties that there is some duplication between the award of lost profits on sales of the NG GMT–800 and an award of royalties for sales of the NG GMT–800 to Mack Trucks and Delphi. However, the court's analysis is somewhat different from Donaldson's, and much more like EPC's. The court has already rejected Donaldson's contention that the jury improperly awarded lost profits damages for infringement by the original GMT–800 that were based on sales of the NG GMT–800. *EPC V*, 330 F.Supp.2d at 1033–34. The court reiterates that the record was sufficient for the jury to find that all of EPC's lost profits, arising from sales by Donaldson of the original GMT–800 *and* the NG GMT–800, were owing to infringement *by the original GMT–800*. Nevertheless, it would be a manifest error, *see Innovative Home Health Care, Inc.*, 141 F.3d at 1286 (the "limited function" of a Rule 59(e) motion is to correct "manifest errors of law or fact"), and substantially unjust, *see MIF Realty*, 92 F.3d at 755–56 (the purpose of Rule 60(b) is to do substantial justice), to allow EPC to recover both "lost profits" and a "reasonable royalty" for sales that *actually* involved the NG GMT–800. EPC acknowledges as much, by suggesting that the court amend the judgment only to delete the duplicative portion of the reasonable royalty award for the NG GMT–800. The court agrees with EPC that the duplicative portion of the reasonable royalty award is the portion attributable to the sales to Mack Truck and Delphi, for which EPC received lost profits damages, but not the portion attributable to sales to DAF, for which no lost profits damages were sought or obtained.

Therefore, Donaldson's motion to amend the August 12, 2004, Judgment will be granted to the extent that the second numbered paragraph of the August 12, 2004, Judgment will be altered and amended, pursuant to Rule 59(e), to read as follows: "For infringement by the Next Generation GMT–800, $31,194 as a reasonable royalty for sales to DAF."

#### b. Improper enhancement

■ The court rejects, however, Donaldson's contention that the court improperly enhanced damages attributable to infringement by the NG GMT–800, when there was no threshold finding by the jury that infringement by the NG GMT–800 was "willful." As explained above, the jury reasonably concluded that all of EPC's lost profits, even profits lost to sales of the NG GMT–800, were attributable to infringement *by the original GMT–800*, and the jury also found that infringement by the original GMT–800 was "willful." Thus, enhancement of the full amount of damages awarded for infringement by the original GMT–800 was appropriate. To put it another way, there is no basis to alter or amend the award of enhanced damages, because the court only enhanced damages attributable to infringement by the original GMT–800, and the portion of Donaldson's motion seeking such an amendment will be denied.

### B. EPC's Motion For Attorney Fees And Expenses

#### 1. Arguments of the parties

In its motion for attorney fees and expenses, EPC seeks a finding that this is an

"exceptional case," warranting an award of $1,720,916.25 in attorney fees and $129,880.00 in expenses pursuant to 35 U.S.C. § 285. In addition, EPC seeks expert witness fees in the amount of $601,992.25. EPC notes that these amounts should be augmented with the fees and expenses incurred post-trial. Consequently, on July 2, 2004, EPC also filed a supplemental affidavit seeking an additional $124,016.75 in attorney fees through June 25, 2004, for a total of $1,844,933.00, and an additional $2,837.23 in expenses, for a total of $132,725.20.

EPC contends that the jury's finding of "willful" infringement alone justifies an award of reasonable attorney fees and that the nature of Donaldson's willful infringement in this case clearly warrants such an award. As to the amount of its fees, EPC contends that it has paid the average customary fee for patent litigation through trial; this case was extremely long and complicated; and its results were excellent. Moreover, EPC contends that the breakdown of the documentation of its legal fees further demonstrates that the fees claimed are reasonable. Finally, EPC contends that it should also be awarded reasonable expenses not covered by the bill of costs, including expert witness fees. EPC concedes that expert witness fees cannot be awarded under § 285, but contends that they can be, and should be in this case, awarded pursuant to the court's inherent power to sanction Donaldson's conduct, which required EPC to hire experts and forced up the costs of those experts, because of Donaldson's various challenges to their testimony. Otherwise, EPC contends that it will not be placed in the position it would have enjoyed absent Donaldson's conduct.

Donaldson does not agree with the award of any fees or expenses or with the amount of fees claimed, if they are awarded. First, Donaldson contends that EPC has not shown by clear and convincing evidence that this is an "exceptional case." Donaldson contends that a jury finding of "willfulness" does not require an award of fees and expenses, and that EPC's evidence of "willfulness" is, in any event, too weak to warrant an award of fees and expenses. Donaldson reiterates both its contention that it had a good faith belief that EPC's patent was not enforceable and its contention that it engaged in no litigation misconduct over the very lengthy history of this case. Donaldson also contends that it attempted to remediate any infringement by producing the NG GMT–800 soon after EPC commenced this litigation. Such an effort to "design around" a patent should not be discouraged, Donaldson contends, by an award of fees and expenses despite the effort. Donaldson also argues that there is a complete absence of bad faith on its part in the conduct of the litigation. Indeed, Donaldson points out that the court complimented the professionalism of counsel for both parties. Donaldson also contends that the court's denial of adverse dispositive motions indicates the reasonableness of its defenses, as does the fact that it prevailed on some significant issues in the litigation. If any fee award is appropriate, Donaldson contends that the claimed fees are unreasonable, because EPC should not be awarded fees for unsuccessful, withdrawn, or unasserted claims; some of EPC's fees are duplicative or unnecessary, for example, because twenty-three separate attorneys worked on the case for EPC, and because some of the fees claimed are for overhead expenses; EPC has improperly based its fee claim on Minneapolis–St. Paul rates, rather than local rates; and EPC has failed to comply with Local Rule 54.2 in its documentation of its fee claim. Donaldson also contends that expert witness fees should not be awarded, because there is no basis for the court to find that Donaldson

acted in bad faith. Finally, Donaldson challenges some specific items claimed as expenses.

In reply, EPC reiterates that the jury's finding of "willfulness" alone is sufficient to justify an award of fees and expenses in this case, and that Donaldson's contrary arguments about the supposed weakness of the showing of "willfulness" and strength of Donaldson's showing of its own good faith have already been rejected by the court, albeit in other contexts. Equally without merit, EPC contends, are Donaldson's challenges to the amount of the fees claimed. Specifically, EPC contends that the total rates and fees claimed are reasonable for a patent case, according to national survey results; the attorneys involved are well-qualified, and EPC was entitled to draw upon counsel from a national market in patent litigation; the case was long and complicated and was made more so by Donaldson's defense tactics; and EPC obtained excellent results. Moreover, EPC contends that there is no justification for any reduction for specific claims, but if any were made on that ground, no more than $35,000 in fees are attributable to issues, such as a trade dress claim, on which EPC did not prevail. EPC also contends that the number of attorneys is a symptom of the duration of the litigation and that attorneys outside the "core" group were carefully used for discrete issues, so that there is no evidence of duplication of effort. Finally, EPC contends that it has complied with Local Rule 54.2, but if it has not technically complied, it has certainly complied with the spirit of the rule.

As noted above, EPC filed a supplemental affidavit seeking additional fees and expenses through June 25, 2004. Donaldson filed a resistance to the supplemental fee and expenses claim in which Donaldson asserted the same arguments it had asserted in resistance to the initial fee claim.

### 2. *Attorney fees and expenses*

#### a. *Applicable standards*

■ Section 285 of Title 35 provides that a "court in exceptional [patent] cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. The Federal Circuit Court of Appeals has explicitly interpreted "attorney fees" under § 285 to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit," and has, therefore, awarded expenses in addition to attorney fees pursuant to § 285. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983). Review of whether a case is "exceptional" under the statute, thus warranting an award of attorney fees and expenses, is a matter of Federal Circuit law. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1407 (Fed.Cir. 2004); *Q–Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed.Cir.2004) ("We apply Federal Circuit law to the issue of attorney fees in patent infringement cases.").

■ The determination of whether to award fees and costs involves a two-step process: "First, a district court must determine whether the prevailing party has proved by clear and convincing evidence, *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed.Cir.2000), that the case is 'exceptional.'" *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed.Cir.2003) (citing 35 U.S.C. § 285 (2000), and *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1460 (Fed.Cir. 1998) (*en banc* )), *cert. denied*, ―― U.S. ――, 124 S.Ct. 1076, 157 L.Ed.2d 896 (2004). "Second, if the district court finds the case to be exceptional, it must then determine whether an award of attorney fees is appropriate." *Id.* at 1328 (citing *Cybor Corp.*, 138 F.3d at 1460). The Federal Circuit Court of Appeals will "review a district court's findings of fact for clear

error, and the legal standard applied de novo," and "[i]f a district court properly finds a case to be exceptional, [the court will] review its decision regarding the award of attorney fees to the prevailing party for abuse of discretion." *Id.; Glaxo Group, Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1346 (Fed.Cir.2004); *Q–Pharma, Inc.*, 360 F.3d at 1299; *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed.Cir.2004).

 As to the first step in the inquiry, "[a] party's success on the merits of an ultimate issue in a patent case does not automatically render a case 'exceptional' for purposes of the attorney fee statute." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1367, 2004 WL 1949762, *13 (Fed.Cir.2004). Rather, "[e]xceptional cases include those involving 'inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.'" *Q–Pharma, Inc.*, 360 F.3d at 1304 (quoting *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed.Cir. 2003)); *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed.Cir.2003) (citing the same circumstances as making a case "exceptional"). Here, EPC relies on the jury's finding of "willfulness" to justify an award of attorneys fees. The Federal Circuit Court of Appeals has made clear that, "[w]hile a finding of willful infringement does not require a finding that a case is exceptional, our cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case 'exceptional' for purposes of awarding attorney fees to the prevailing patent owner." *Golight, Inc. v. Wal–Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed.Cir. 2004) (citations and internal quotation marks omitted); *accord Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1373, 2004 WL 1950287, *5 (Fed.Cir.2004) ("[O]ur precedent is clear that "a finding

of willful infringement merely *authorizes*, but does not *mandate*, an award of increased damages.") (quoting *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed.Cir.1990), with emphasis in the original, and also citing *Transclean Corp. v. Bridgewood Servs.*, 290 F.3d 1364, 1378 (Fed.Cir.2002)). Thus, where the award is based on a finding of willfulness, it is within the district court's *discretion* whether or not to award attorney fees under § 285. *Id.* The Federal Circuit Court of Appeals has expressly rejected the contention that conduct more egregious than "willful" infringement is required for the district court to find that the case is "exceptional." *Id.* (citing *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1567 (Fed.Cir.1988)).

 If the court finds that the case is "exceptional," it must then exercise its discretion to determine whether or not to award attorney fees. *See Forest Labs., Inc.*, 339 F.3d at 1328 ("[I]f the district court finds the case to be exceptional, it must then determine whether an award of attorney fees is appropriate.") (citing *Cybor Corp.*, 138 F.3d at 1460). Factors guiding the court's discretion include " 'the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.' " *Juicy Whip, Inc.*, 382 F.3d at 1373, 2004 WL 1950287 at *5 (quoting *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1378 (Fed.Cir.2001), in turn quoting *National Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir.1996)). However, "[a] district court abuses its discretion in awarding attorney's fees when its decision is based on clearly erroneous findings of fact, an erroneous interpretation of the law, or is clearly unreasonable, arbitrary, or fanciful." *Glaxo Group, Ltd.*, 376 F.3d at 1351.

Finally, as to the *amount* of attorney fees to award, the Federal Circuit has adopted the Supreme Court's statement in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "an attorney fees determination 'should not result in a second major litigation.'" *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1459 (Fed.Cir.1991) (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933). Some time ago, the Federal Circuit Court of Appeals explained that, "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1068 (Fed.Cir.1983). More recently, the Federal Circuit Court of Appeals has explained that the amount of attorney fees to award depends on the extent to which the party "prevailed" and the extent to which the case is "exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed.Cir.2001). The Federal Circuit Court of Appeals has also recognized that "insufficient documentation" may warrant a reduction in fees, but even where documentation is insufficient, the court is not relieved of its obligation to award a reasonable fee; therefore, the court may rely on its own experience in determining reasonable rates and hours where documentation is inadequate. *Slimfold Mfg. Co., Inc.*, 932 F.2d at 1459. Moreover, even where documentation is flawed, the question is whether the documentation provided is fairly detailed and extensive, such that a determination of the reasonableness of the fees claimed can be made. *Id.*

### b. Analysis

■ The court concludes that EPC has proved, by clear and convincing evidence, that this is, indeed, an "exceptional" case. *See Forest Labs., Inc.*, 339 F.3d at 1327 (identifying the first step in the analysis).

The court has upheld the jury's finding of "willfulness" against all of Donaldson's previous attacks, and is no more persuaded by Donaldson's renewed arguments about its supposed "good faith" in resistance to the claim for attorney fees. "Willfulness" alone is sufficient to make a case "exceptional," *see Q–Pharma, Inc.*, 360 F.3d at 1304 ("exceptional cases" include those involving "willful infringement"); *Phonometrics, Inc.*, 350 F.3d at 1246 (same), although a finding of "willfulness" does not *require* a finding that the case is also "exceptional." *Golight, Inc.*, 355 F.3d at 1340. Certainly, no conduct more egregious than "willfulness" is required. *Id.* The "willfulness" at issue here, as detailed in the court's prior rulings, is plainly sufficient to make this case "exceptional."

■ The court, therefore, turns to the second step in the analysis, determination, in its discretion, of whether or not to award attorney fees and expenses. *See Forest Labs., Inc.*, 339 F.3d at 1328 (identifying the second step in the analysis). The court concludes that the pertinent factors also weigh in favor of such an award in this case. First, the court finds that Donaldson's infringement was plainly "culpable," just as it was "willful," and that the infringement question, at least as to the original GMT–800, was by no means a close one. *Juicy Whip, Inc.*, 382 F.3d at 1373, 2004 WL 1950287 at *5 (identifying these factors as guiding the court's discretion as to whether or not to award attorney fees). Moreover, while not necessarily amounting to misconduct, Donaldson's concede-nothing-and-take-no-prisoners approach to this litigation added significantly to EPC's attorney fees and expenses, such that it would be inequitable to force EPC to bear all of those fees and expenses. *Id.* (permitting the court to consider the defeated party's "litigation conduct").

■ Because the court finds that this case is "exceptional," and finds, further, that an award of attorney fees and expenses is appropriate, the court turns, finally, to Donaldson's contentions that the fees and expenses claimed are not reasonable. The court will resist Donaldson's invitation to make attorney's fees, like everything else in this lawsuit, another " 'major litigation.' " *See Slimfold Mfg. Co., Inc.*, 932 F.2d at 1459 (asserting that "an attorney fees determination 'should not result in a second major litigation' ") (quoting *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933). Here, the court finds more than adequate evidence to support the reasonableness of most, if not all, of the hours expended and more than adequate evidence to support the reasonableness of all of the hourly rates charged. *Lam, Inc.*, 718 F.2d at 1068 (requiring such "reasonableness").

More specifically, to the extent that the amount of attorney fees depends on the extent to which EPC "prevailed" and the extent to which the case is "exceptional," *see Special Devices, Inc.*, 269 F.3d at 1344 (the amount of attorney fees depends on the extent to which the party "prevailed" and the extent to which the case is "exceptional"), the court finds that any marginal reduction that might be appropriate for claims or issues on which EPC did not prevail, such as EPC's trade dress claim, is reasonably offset by the "exceptionalness" of the case and the extent to which claims and issues were intertwined. While the number of attorneys who worked on the case for EPC gives the court some pause, the court cannot agree that the number demonstrates that the fee claim is per se unreasonable. Rather, considering the size of EPC's counsel's law firm and the number of years the litigation lasted, it is not unreasonable that numerous attorneys worked on the case at some point. Moreover, the court is persuaded, from its review of the record, that the attorneys out-side of the "core" prosecution team were used, as EPC contends, for discrete, non-duplicative issues. Similarly unavailing is Donaldson's contention that paralegal and librarian research time and electronic research charges are "overhead." Use of such people and methods to conduct legal research is a legitimate legal research expense, was more cost-efficient than use of attorney time, and likely ultimately *reduced* the total fee claim. *See Central Soya Co.*, 723 F.2d at 1578 ("attorney fees" under § 285 include "sums that the prevailing party incurs in the preparation for and performance of legal service related to the suit").

The court is also unmoved by Donaldson's contention that EPC should only be able to claim attorney time at a "local" rate, rather than a rate based on Minneapolis–St. Paul average rates. Donaldson, itself, employed Minneapolis–St. Paul counsel, and the court doubts very much that Donaldson's counsel intends to or has billed Donaldson only at a reduced "local" rate. Moreover, as EPC points out, patent litigation is specialized, so that a party involved in complex patent litigation may reasonably select counsel from anywhere in the United States. *See* EPC's Reply Brief at 8 (citing CHISUM ON PATENTS, § 20.03[4][c][vii] and cases cited therein). Finally, because this was a patent suit, and few patent attorneys are available in Iowa, patent attorneys from Minneapolis–St. Paul, Chicago, Kansas City, and St. Louis should reasonably be considered "local" attorneys and the prevailing rate for such attorneys is an appropriate basis for determining reasonable hourly rates in this case. The hourly rates claimed by EPC's counsel were entirely reasonable in light of these considerations.

Donaldson's last objection to the amount of fees is that EPC's documentation is inadequate and fails to comply with Local

Rule 54.2. The court recognizes that reduction of fee claims for inadequate documentation is appropriate, even in the absence of a local rule, like Local Rule 54.2, which prescribes the manner in which fee claims are to be submitted. *See Slimfold Mfg. Co., Inc.*, 932 F.2d at 1459 (recognizing that "insufficient documentation" may warrant a reduction in fees). However, the court finds that EPC's fee application is neither out of compliance with Local Rule 54.2 nor otherwise inadequate. EPC's fee claim is "supported by an itemization that includes a detailed listing of the time claimed for each specific task and the hourly rate claimed," and does include "a separate summary indicating the total time spent performing each of [several] major categories of work," including drafting, research, investigation, interviewing, trial preparation, and trial. N.D. IA. L.R. 54.2(a). Some entries may be terse, but they are not so obscure as to prevent the court from evaluating the reasonableness of the fees claimed. *See Slimfold Mfg. Co., Inc.*, 932 F.2d at 1459 (even where documentation is flawed, the question is whether the documentation is fairly detailed and extensive, such that the court can determine the reasonableness of the fees claimed).

Donaldson's complaints about excessive hours and excessive rates simply do not ring true on the court's own, independent review of EPC's claim for fees and expenses. The court notes that Donaldson did not offer its own billing records and hourly rates in an attempt to show that EPC's claim is unreasonable. The court is confident that the reason for not doing so is obvious: The comparison would not support Donaldson's contentions. Also, as the court noted above, with regard to the appropriateness of awarding fees, Donaldson took a concede-nothing-and-take-no-prisoners approach to this litigation. Indeed, Donaldson left no issue unfought and was never content with prior adverse rulings

on any issue, reopening and rearguing several issues over and over. The inevitable result of Donaldson's scorched-earth litigation tactics was an increase in the attorney fees and expenses that EPC incurred to respond. A party who engages in such tactics cannot be surprised or complain about increased litigation expenses when it becomes appropriate to shift the opposing party's expenses to that party. Here, Donaldson's conduct significantly increased EPC's attorney fees and expenses; therefore, it is reasonable to require Donaldson to bear all of the expenses that EPC incurred. Ultimately, however, under any standard, the court finds that EPC's claim for fees (in terms of hours expended and hourly rates charged) and expenses is both adequately supported and reasonable and that shifting all of those fees and expenses to Donaldson is permissible under 35 U.S.C. § 285 and appropriate in this case.

Consequently, the court will award the full amount of attorney fees and expenses claimed by EPC in its June 4, 2004, Motion For Attorneys' Fees And Expenses (docket no. 406) and its July 2, 2004, Supplement (docket no. 456).

### 3. Expert witness fees

#### a. Applicable standards

In *Amsted Industries, Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374 (Fed.Cir.1994), the Federal Circuit Court of Appeals clarified the authority for a district court to award expert witness fees to a prevailing party and the circumstances under which it may do so. The court explained that, in the wake of the Supreme Court's decision in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), "an award under section 285 encompasses only attorney fees; expert witness fees fall under 28 U.S.C. § 1920, sub-

ject to the 28 U.S.C. § 1821(b) limitation." *Amsted Indus., Inc.,* 23 F.3d at 377. However, the court also held that a district court may invoke its "inherent power" to award expert witness fees in excess of the § 1821(b) cap as a sanction against a losing party. *Id.* at 378. The court then observed,

> [N]ot every case qualifying as "exceptional" under section 285 will qualify for sanctions under the court's inherent power. *See Mathis [v. Spears],* 857 F.2d [749,] 758 [ (Fed.Cir.1988) ] (characterizing the case as a " 'very exceptional' case of 'gross injustice' "). This court must therefore assess whether this case goes sufficiently beyond "exceptional" within the meaning of section 285 to justify an award of expert fees as a sanction under the court's inherent power.

*Amsted Indus., Inc.,* 23 F.3d at 378–79. An award of expert witness fees pursuant to the court's inherent power to impose sanctions is reviewed for abuse of discretion. *Id.* at 379.

The court in *Amsted Industries* concluded that the district court had abused its discretion by awarding the full amount of expert witness fees, because the district court's findings did not warrant sanctions under the court's inherent power. *Id.* The court agreed that the defendant's litigation conduct justified an award of attorney fees and enhanced damages under § 285, but "did not amount to a fraud on the court or an abuse of the judicial process." *Id.* More specifically, the court found that the defendant had "engaged in no fraudulent conduct, filed no false pleadings, and used no tactics of oppression and harassment," and that the defendant "committed no discovery abuse, presented no misleading evidence at trial, and engaged in no conduct amounting to abuse of judicial process." *Id.* (distinguishing cases awarding expert witness fees). The court explained, further, that the court must "distinguish between inappropriate conduct redressable under 35 U.S.C. §§ 284, 285 and egregious conduct which justifies resort to the inherent power to sanction," explaining that "[t]here are degrees of unjustifiable conduct." *Id.* In the case before it, the court concluded that "the litigation misconduct falls within the remedies of sections 284 and 285, but does not constitute bad faith and fraud on the court to the extent of defiling 'the very temple of justice.' " *Id.* (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

■ The court in *Amsted Industries* also reiterated the Supreme Court's admonition that trial courts must "first employ statutory and rules sanctions" before invoking their inherent powers to sanction parties. *Id.*

Thus, courts should only resort to further sanctions when misconduct remains unremedied by those initial tools: "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [statutes or] rules, the court ordinarily should rely on the [statutes or] rules rather than the inherent power." *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. The court should resort to its inherent power only where the rules or statutes do not reach the " 'acts which degrade the judicial system.' " *Id.* at 41–42, 111 S.Ct. at 2131 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 124 F.R.D. 120, 139 (W.D.La.1989)).

Section 1920 of title 28 allows the trial court to shift expert witness fees to the extent allowed under section 1821(b). In addition, section 285 provides a statutory remedy—shifting of attorney fees—for the conduct which caused the trial court to designate this case as exceptional. Section 285 does not include shifting of expert fees as part of that remedy.

[The defendant] committed no fraud on the court warranting sanctions beyond the adequate statutory remedial devices. In sum, the award of attorney fees under section 285 adequately reaches any litigation misconduct of [the defendant]. *Amsted Indus., Inc.*, 23 F.3d at 379. It follows that a court may not award expert witness fees as a sanction, pursuant to the court's inherent power, where a statute or rule adequately reaches the litigation misconduct in question.

### b. Analysis

■ The court concludes that it is inappropriate to exercise its "inherent power" to award expert witness fees in this case. Although the court has concluded, without hesitation, that this case is "exceptional" under § 285, that finding is not enough to impose the additional sanction of awarding expert witness fees. *Id.* at 378. While it may be a close question, the court is not convinced that "this case goes sufficiently beyond 'exceptional' within the meaning of section 285 to justify an award of expert fees." *Id.* at 378–79. The court described Donaldson's litigation style above as "concede-nothing-and-take-no-prisoners" and "scorched-earth tactics," and previously described one of Donaldson's post-trial arguments as "frivolous." *See EPC V*, 330 F.Supp.2d at 1042–43 (rejecting Donaldson's argument that use of a Federal Judicial Center videotape during jury selection was a ground for a new trial). Nevertheless, the court cannot say that Donaldson's conduct "amount[ed] to fraud on the court or an abuse of the judicial process." *See Amsted Indus., Inc.*, 23 F.3d at 379 (identifying such conduct as warranting sanctions). Moreover, while at times exasperating and tenacious to the point of absurdity, Donaldson's litigation of every issue in the case to the hilt did not involve fraudulent conduct, false pleadings, or oppressive and harassing tactics, nor did Donaldson engage in sanctionable discovery abuse, or present misleading evidence. *Id.* Thus, the "misconduct" properly at issue here is "willful infringement," for which adequate remedies are available—and have been applied in this case—by enhancing damages pursuant to 35 U.S.C. § 284 and awarding attorney fees and expenses pursuant to 35 U.S.C. § 285. *See id.* (there are degrees of unjustifiable conduct and the court should first rely on the statutes or the rules before resorting to its inherent power to impose sanctions).

Therefore, EPC's request for an award of expert witness fees, in addition to attorney fees and expenses, will be denied.

## III. CONCLUSION

The court draws the curtain on the "final" episode in this drama with the following resolution of the last pending motions:

1. EPC's June 4, 2004, Motion For Attorneys' Fees And Expenses (docket no. 406) and its July 2, 2004, Supplement (docket no. 456) are **granted in part and denied in part**. Specifically, pursuant to 35 U.S.C. § 285, EPC shall be awarded a total of $1,844,933.00 in attorney fees and a total of $132,725.20 in expenses, but EPC's claim for expert witness fees in the amount of $601,992.25 is denied.

2. Donaldson's August 26, 2004, Motion To Alter Or Amend Judgment Pursuant To Fed.R.Civ.P. 59(e) (docket no. 466) is also **granted in part and denied in part**. Specifically, the second numbered paragraph of the August 12, 2004, Judgment is hereby **altered and amended**, pursuant to Rule 59(e), to read as follows: "For infringement by the Next Generation GMT–800, $31,194 as a reasonable royalty for sales to DAF." However, Donaldson's request to alter or amend the amount of

enhanced damages in the Judgment is denied.

**IT IS SO ORDERED.**