**AMSTED INDUSTRIES INCORPORATED, Plaintiff–Appellee,**

v.

**BUCKEYE STEEL CASTINGS COMPANY, Defendant–Appellant.**

No. 93–1552.

United States Court of Appeals, Federal Circuit.

April 18, 1994.

Joseph A. Grear, Law Offices of Rolf Stadheim, Ltd., of Chicago, IL, argued for plaintiff-appellee. With him on the brief was Rolf Stadheim.

Thomas A. Fairhall, Allegretti & Witcoff, Ltd., of Chicago, IL, argued for defendant-appellant. With him on the brief were Robert M. Ward and Edward W. Remus. Also on the brief was Ellen A. Efros, Vorys, Sater, Seymour & Pease, of Washington, DC.

Before PLAGER, LOURIE, and RADER, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Northern District of Illinois ordered Buckeye Steel Castings Company to pay Amsted Industries, Inc. $510,528.90 in attorney fees. This fee award included expert witness fees. Buckeye appeals the award of expert witness fees under 35 U.S.C. § 285 (1988). Because the district court exceeded its authority in the award of expert witness fees, this court reverses and remands.

## BACKGROUND

This attorney fee award came in the wake of extensive litigation. Amsted sued Buckeye for infringement of U.S. Patent No. 3,664,269 (the '269 patent). On January 21, 1993, a jury found for Amsted and awarded $1,497,232 in damages. Buckeye appealed that judgment to this court. This court's separate ruling on the infringement judgment describes the litigation giving rise to this appeal. *Amsted Indus. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed.Cir.1994).

On March 29, 1993, the district court granted Amsted's motion for enhanced damages and attorney fees under 35 U.S.C. §§ 284, 285 (1988). Under the March 1993 order, Amsted submitted a petition requesting $510,528.90 in attorney fees and expenses. Expert witness fees accounted for $146,453.61 of that amount. On July 21, 1993, the court granted Amsted's petition, awarding the full amount requested. The district court's July 21, 1993 order, *in toto*, stated:

> Plaintiff Amsted Industries petition for attorney's fees in the amount of $510,528.90 is granted. Defendant Buckeye Steel's objection to the inclusion of expert witness fees is overruled. This patent jury trial was an "exceptional case" requiring the use of expert testimony. Therefore, expert witness fees were a reasonable and necessary expenditure. *See* 35 U.S.C. § 285; *Mathis v. Spears*, 857 F.2d 749, 758–59 (Fed.Cir.1988).

*Amsted Indus. v. Buckeye Steel Castings Co.*, No. 91 C 1179, 1993 WL 96517 (N.D.Ill. July 21, 1993) (order granting petition for attorney fees). Buckeye appealed.

## DISCUSSION

### I.

Title 28 grants authority to trial courts to award costs of litigation. Section 1920 pro-

vides that a judge of any United States court may tax "[f]ees and disbursements for printing and witnesses" as "costs." 28 U.S.C. § 1920(3) (1988). Section 1821(b), however, limits expert witness fee awards under section 1920:

A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821(b) (Supp. IV 1992).

In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court held that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Id.* at 439, 107 S.Ct. at 2496. In this case, this court faces the issue of whether 35 U.S.C. § 285 provides the explicit authority *Crawford Fitting* requires for an award of expert witness fees above the limit in 28 U.S.C. § 1821(b). This court holds that it does not.

The law governing expert witness fee awards has followed a winding path through the federal judiciary in the last decade. An understanding of the posture of this appeal requires some retracing of that path. A convenient place to begin is *Crawford Fitting*. As mentioned, this 1987 Supreme Court case clarified that the limits of section 1821 govern expert witness fees in the absence of explicit statutory authority to exceed the cap.

A year later, this court determined that a district court, under appropriate circumstances, could award expert witness fees beyond the section 1821 limit. *Mathis v. Spears*, 857 F.2d 749, 759, 8 USPQ2d 1029, 1037 (Fed.Cir.1988). This court found authority to exceed the section 1821 limit in 35 U.S.C. § 285. *Mathis*, 857 F.2d at 759.

■ Section 285 of title 35 states:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The decision to award attorney fees under 35 U.S.C. § 285 in "exceptional" cases is discretionary with the trial court judge. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551, 13 USPQ2d 1301, 1304 (Fed. Cir.1989). "Among the types of conduct which can form a basis for finding a case exceptional are willful infringement, inequitable conduct before the P.T.O. [Patent and Trademark Office], misconduct during litigation, vexatious or unjustified litigation, and frivolous suit." *Id.* at 1551.

■ In *Mathis*, this court reasoned that *Crawford Fitting* did not reach the issue of whether statutes specifically providing for "attorney fees" authorized an award of expert witness fees beyond the section 1821 limit. *Mathis*, 857 F.2d at 758. *Crawford Fitting* involved an award of expert witness fees under Fed.R.Civ.P. 54(d), which provides "costs" to the prevailing party except as otherwise provided by statute, rule, or court order. Because *Crawford Fitting* seemed to only limit the award of expert witness fees as part of the "costs" of litigation, this court concluded that section 285's attorney fees language justified the award of expert witness fees. *Mathis*, 857 F.2d at 759. *Accord Beckman Instruments*, 892 F.2d at 1554.

*Mathis* also relied on a court's power to award expert fees upon a finding of bad faith litigation conduct:

[U]nder Section 285, which authorizes an award of fees only upon a finding of "exceptional case," a district court may, in the exercise of its discretion and inherent equity power, in a proper case, include an award of reasonable expert witness fees in excess of the ... attendance fee specified in 28 U.S.C. § 1821.

*Mathis*, 857 F.2d at 759 (footnote omitted). Thus, after 1988, this court permitted the award of expert witness fees beyond the limits of section 1821 as part of an award of "reasonable attorney fees" under section 285.

In 1991, however, the Supreme Court clarified the nature of the express statutory authority necessary to exceed the limits of sec-

tion 1821. In *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (superseded by statute as it pertains to 42 U.S.C. § 1988), the Supreme Court addressed whether 42 U.S.C. § 1988 (1988) provided explicit statutory authority to shift expert witness fees to the losing party. Section 1988 states: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Id.*

The Supreme Court determined that the term "attorney's fees" in 42 U.S.C. § 1988 did not provide the explicit statutory authority contemplated by *Crawford* to award expert fees beyond 28 U.S.C. § 1821(b). Citing several fee-shifting statutory provisions that explicitly shift both attorney fees and expert witness fees, the Court concluded: "Such [expert witness] fees are referred to *in addition to* attorney's fees when a shift is intended." *West Virginia University*, 499 U.S. at 90, 111 S.Ct. at 1142–43.

The Court also reasoned that most courts, before enactment of section 1988, held that expert witness fees were not shifted in a statute that merely provided for attorney fees. In this context, the Supreme Court cited 35 U.S.C. § 285:

> Also instructive is pre–1976 practice under the federal patent laws, which provided, 35 U.S.C. § 285, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Again, every court to consider the matter as of 1976 thought that this provision conveyed no authority to shift expert fees.

*West Virginia University*, 499 U.S. at 95, 111 S.Ct. at 1145. The Court concluded that neither pre–1976 statutory nor judicial usage regarded the term "attorney fees" as encompassing expert witness fees. Thus, the Supreme Court held that section 1988 conveyed no authority to shift expert fees. Therefore, only 28 U.S.C. § 1920—with the incorporated limits of 28 U.S.C. § 1821(b)—authorized expert witness fees.

*West Virginia University* requires explicit statutory reference to expert witness fees in order to supersede 28 U.S.C. § 1821. *West Virginia University* clarified that the term "reasonable attorney fees" does not include expert witness fees. Section 285, like 42 U.S.C. § 1988, provides only for "reasonable attorney fees." Indeed the Supreme Court specifically characterized section 285 as a statute authorizing only attorney fees, exclusive of expert witness fees.

Thus, in the wake of *West Virginia University*, a court of the United States cannot rely solely on section 285 to award expert witness fees. As *West Virginia University* clarifies, an award under section 285 encompasses only attorney fees; expert witness fees fall under 28 U.S.C. § 1920, subject to the 28 U.S.C. § 1821(b) limitation. To the extent that this court's prior precedents hold that section 285 authorizes an award of expert witness fees, *West Virginia University* overruled them.

In light of *West Virginia University*, the district court in this case erred. The trial court incorrectly awarded expert witness fees under section 285 and also incorrectly exceeded the limits of 28 U.S.C. § 1821(b). Accordingly, this court reverses the district court's award of expert witness fees and remands for a recalculation of expert fees according to 28 U.S.C. § 1920.

## II.

Amsted also seeks to justify the district court's expert witness fee award as an action incident to the trial court's inherent equitable powers. The Supreme Court recently reaffirmed the federal judiciary's inherent power to impose sanctions. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the district court imposed sanctions against Chambers "in the form of attorney's fees and expenses totaling $996,-644.65, which represented the entire amount of NASCO's litigation costs paid to its attorneys." *Id.* 501 U.S. at 40, 111 S.Ct. at 2130. The award at issue involved both attorney fees and additional expenses. Chambers drew this sanction for trying to deprive the court of jurisdiction by acts of fraud outside the confines of the court, for filing false and frivolous pleadings, and for using tactics of delay, oppression, harassment, and massive expense in an attempt to wear down the opposing party. *Id.* 501 U.S. at 41, 111 S.Ct.

at 2131. Although the district court considered sanctions under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927, it relied instead on its inherent power to reach the entirety of Chambers' egregious conduct. *Id.*

The Supreme Court affirmed. The Court recognized three exceptions to the "American Rule" against shifting fees to the losing party:

> The first, known as the "common fund exception," derives not from a court's power to control litigants, but from its historic equity jurisdiction and allows a court to award attorney's fees to a party whose litigation efforts directly benefit others. Second, a court may assess attorney's fees as a sanction for the " 'willful disobedience of a court order.' " Thus, a court's discretion to determine "[t]he degree of punishment for contempt" permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation.
>
> Third, and most relevant here, a court may assess attorney's fees when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' "

*Chambers,* 501 U.S. at 45–46, 111 S.Ct. at 2133 (citations omitted).

The Court held that statutes governing sanctions do not displace the federal courts' inherent power to impose sanctions for bad faith and vexatious conduct. The Court emphasized, however, a court must use caution when invoking its inherent powers to impose sanctions. *Id.* 501 U.S. at ——, 111 S.Ct. at 2136. In particular, the Court indicated that when statutes or rules provide an adequate sanction for bad faith, a trial court should ordinarily rely on those express authorities for sanctions. "But if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id.*

In *Chambers,* neither statutory nor rules sanctions reached all of the bad faith conduct. The "entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court." *Id.* Thus, the Supreme Court permitted a federal court to invoke its inherent powers if it determines " 'that fraud has been practiced

upon it, or that the very temple of justice has been defiled.' " *Id.* 501 U.S. at 46, 111 S.Ct. at 2133 (quoting *Universal Oil Prods. Co. v. Root Ref. Co.,* 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946)). Similarly, a court may impose sanctions where "a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.' " *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133 (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n. 14, 98 S.Ct. 2565, 2573 n. 14, 57 L.Ed.2d 522 (1978)). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975). Without a finding of fraud or bad faith whereby the "very temple of justice has been defiled," a court enjoys no discretion to employ inherent powers to impose sanctions. *See Chambers,* 501 U.S. at 50–51, 111 S.Ct. at 2136; *Alyeska Pipeline,* 421 U.S. at 258–59, 95 S.Ct. at 1622.

The United States Court of Appeals for the Federal Circuit has recognized a federal court's inherent power to impose sanctions. *See, e.g., A. Hirsh, Inc. v. United States,* 948 F.2d 1240, 1248 n. 9 (Fed.Cir.1991). In *Mathis,* the plaintiff committed discovery abuses, brought suit under utility and design patents known to be invalid, committed inequitable conduct before the P.T.O., and engaged in a misleading simulation of a prior art device at trial. In upholding an award of expert witness fees ostensibly imposed under section 285, this court in *Mathis* also invoked the district court's inherent power to uphold the attorney fee award. *See Mathis,* 857 F.2d at 754, 757–58. To the extent *Mathis* relied on the court's inherent power in the face of egregious fraud, *Chambers* does not disturb its ruling.

*Chambers* and *Mathis* both require a finding of fraud or abuse of the judicial process before a trial court can invoke its inherent sanctioning power to impose expert witness fees in excess of the section 1821(b) cap. Indeed, not every case qualifying as "exceptional" under section 285 will qualify for sanctions under the court's inherent power. *See Mathis,* 857 F.2d at 758 (characterizing the case as a " 'very exceptional' case of 'gross injustice' "). This court must there-

fore assess whether this case goes sufficiently beyond "exceptional" within the meaning of section 285 to justify an award of expert fees as a sanction under the court's inherent power.

■ This court reviews the lower court's use of its inherent power to impose sanctions under the abuse of discretion standard. *Chambers,* 501 U.S. at 54–55, 111 S.Ct. at 2138. In its March 29, 1993 opinion, the district court found that Buckeye copied the 1269 patent, lacked a good faith belief that the '269 patent was invalid, denied infringement in the face of evidence to the contrary, and burdened the court with numerous motions. In addition, when one district judge transferred this case to another, Buckeye refiled a summary judgment motion, thereby violating a court order to refrain from filing additional motions.

■ The district court, however, abused its discretion by awarding the full amount of expert witness fees. The district court's findings do not warrant sanctions under the court's inherent power. Buckeye's litigation conduct, though justifying an award of attorney fees and enhanced damages under section 285, did not amount to a fraud on the court or an abuse of the judicial process. Unlike the sanctionable conduct in *Chambers,* Buckeye engaged in no fraudulent conduct, filed no false pleadings, and used no tactics of oppression and harassment. Unlike the sanctionable conduct in *Mathis,* Buckeye committed no discovery abuse, presented no misleading evidence at trial, and engaged in no conduct amounting to abuse of the judicial process.

In Buckeye's companion appeal, this court affirms the district court's award of treble damages in light of the jury's finding of willful infringement. The district court properly based its ruling on Buckeye's inappropriate litigation behavior. The Supreme Court in *Chambers,* however, requires this court to distinguish between inappropriate conduct redressable under 35 U.S.C. §§ 284, 285 and egregious conduct which justifies resort to the inherent power to sanction. There are degrees of unjustifiable conduct. In this case, the litigation misconduct falls within the remedies of sections 284 and 285, but does not constitute bad faith and fraud

on the court to the extent of defiling "the very temple of justice." *Chambers,* 501 U.S. at 46, 111 S.Ct. at 2133. In passing, this court notes that the district court judge did not in fact expressly call upon her inherent equitable power to sanction.

Finally, *Chambers* admonishes trial courts to first employ statutory and rules sanctions. Thus, courts should only resort to further sanctions when misconduct remains unremedied by those initial tools: "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [statutes or] rules, the court ordinarily should rely on the [statutes or] rules rather than the inherent power." *Chambers,* 501 U.S. at 50, 111 S.Ct. at 2136. The court should resort to its inherent power only where the rules or statutes do not reach the "'acts which degrade the judicial system.'" *Id.* at 41–42, 111 S.Ct. at 2131 (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.,* 124 F.R.D. 120, 139 (W.D.La.1989)).

Section 1920 of title 28 allows the trial court to shift expert witness fees to the extent allowed under section 1821(b). In addition, section 285 provides a statutory remedy—shifting of attorney fees—for the conduct which caused the trial court to designate this case as exceptional. Section 285 does not include shifting of expert fees as part of that remedy. Buckeye committed no fraud on the court warranting sanctions beyond the adequate statutory remedial devices. In sum, the award of attorney fees under section 285 adequately reaches any litigation misconduct of Buckeye.

## CONCLUSION

The district court erred by awarding Buckeye expert witness fees beyond the limits of 28 U.S.C. § 1821(b). This court reverses and remands for a reassessment of the expert witness fee award under 28 U.S.C. §§ 1920, 1821(b).

## COSTS

Each party shall bear its own costs.

**REVERSED AND REMANDED.**