**UNIVERSAL ELECTRONICS, INC., Plaintiff,**

**v.**

**UNIVERSAL REMOTE CONTROL, INC., Defendant.**

**CASE NO. SACV 12–00329 AG (JPRx)**

United States District Court, C.D. California.

Signed 09/04/2015

Mark A. Finkelstein, Jones Day, William C. Rooklidge, Gibson, Dunn & Crutcher LLP, Irvine, CA, Anna R. Buono, Martin L. Fineman, Nicolas A. Jampol, Davis Wright Tremaine LLP, Los Angeles, CA, Ashley E. LaValley, Lee Sheikh Megley & Haan, Christopher J. Lee, Pro Hac Vice, Frederick C. Laney, Pro Hac Vice, Raymond P. Niro, Sr., Pro Hac Vice, Niro Haller and Niro Ltd., Chicago, IL, David B. Cochran, Theodore M. Grossman, Pro Hac Vice, Thomas R. Goots, Pro Hac Vice, Jones Day, Cleveland, OH, for Plaintiff.

Brian E. Haan, Pro Hac Vice, Laura A. Kenneally, Pro Hac Vice, Niro Haller and Niro Ltd., Chicago, IL, for Plaintiff and Defendant.

Brian K. Brookey, Tucker Ellis LLP, Clarence Andrew Rowland, Theodore W. Chandler, Sidley Austin LLP, Steven Erick Lauridsen, Tucker Ellis LLP, Los Angeles, CA, Keith J. Barkaus, Pro Hac Vice, Douglas A. Miro, Pro Hac Vice, Martin Pfeffer, Pro Hac Vice, Michael F. Hurley, Pro Hac Vice, Ostrolenk Faber LLP, New York, NY, Peter H. Kang, Sidley Austin LLP, Palo Alto, CA, Samuel R. Miller, Cynthia A. Chi, Sidley Austin LLP, Teag-

ue I. Donahey, Skjerven Morrill, San Francisco, CA, for Defendant.

## ORDER SETTING AWARD OF FEES AND EXPENSES, INCLUDING TAXABLE COSTS TO DEFENDANT

Andrew J. Guilford, United States District Judge

The Court has held that Defendant Universal Remote Control, Inc. ("Defendant" or "URC") is entitled to attorney fees under 35 U.S.C. section 285, as recently interpreted by the Supreme Court in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, —— U.S. ——, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014). In *Octane*, the Supreme Court eased the requirements to get such fees under section 285. Now the Court must calculate the amount of fees to be awarded. The Court's Order also now calculates appropriate expenses, including whether expert fees are recoverable here. Very voluminous documentation, including supplementation and objections, have been submitted by Defendant and Plaintiff Universal Electronics, Inc. ("Plaintiff" or "UEI").

The calculations and the issues thus presented underscore uncertainty about how to determine attorney fees under section 285. The Court begins with a global fee analysis that it concludes properly balances all interests, and then it engages in a more granular analysis that likely consumes time and resources unnecessarily.

### GLOBAL FEE ANALYSIS

Some have become concerned about wasted effort focused on the recovery of fees under section 285. The calculation of actual fees awarded are a significant part of the time and energy dedicated to section 285 motions.

Authorities vary on how to establish attorney fees in the different areas where fees are recoverable. These include fees under a contract clause, *see, e.g., Becker v. Wells Fargo Bank, N.A.*, 2014 WL 7409447 at *6, 2014 U.S. Dist. LEXIS 178462 at *20 (E.D.Cal. Dec. 29, 2014) ("The starting point for determining reasonable attorneys' fees under Section 1717 is the 'lodestar.' "); the recovery of fees in some class action settlements under a common fund theory, *see, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 967–68 (9th Cir.2003) ("As in a statutory fee-shifting case, a district court in a common fund case can apply the lodestar method to determine the amount of attorneys' fees.... Alternatively, in a common fund case, the district court can determine the amount of attorneys' fees to be drawn from the fund by employing a 'percentage' method."); *Resnick v. Frank (In re Online DVD–Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir.2015) ("The district court did not err in approving the fee award. Plaintiffs' class counsel asked for attorneys' fees in the amount of 25% of the overall settlement fund of $27,250,000 and the district court granted class counsels' request."); and the recovery of fees in a case under 28 U.S.C. section 1983, *see, e.g., McCown v. City of Fontana*, 711 F.Supp.2d 1067, 1072 (C.D.Cal.2010) (stating that "[o]verall, considering all that it observed in this case, this Court makes an equitable finding that the legal services provided that support recoverable fees should be reasonably valued at $150,000," and then awarding $148,250 under the traditional mathematical lodestar analysis) (Guilford, J.), *aff'd*, 2011 WL 6778482, 2011 U.S.App. LEXIS 25841 (9th Cir. Dec. 27, 2011). Of course, different factors are involved in the different areas where fees can be recovered, and they raise various issues. A victorious 1983 plaintiff may be enforcing important constitutional principles, while a fee award in a class action common fund situation may be enforcing statutory regulations. One purpose of section 285 is to deter bad faith litigation by imposing the cost of a bad decision on the decision-maker.

There is a growing trend that District Court judges should award fees based on an overall global understanding and review of a case, rather than on a tedious review of voluminous time entries and hourly rates. Former Supreme Court Justice Sandra Day O'Connor, sitting by designation, has emphasized the overall equitable nature of fee analysis. She has written that "[t]he net result of fee-setting jurisprudence ... is that the district courts must engage in an equitable inquiry of varying methodology while making a pretense of mathematical precision." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189 (2d Cir.2007) (O'Connor, J., sitting by designation, joining in the opinion) (citation omitted). Justice Elena Kagan has echoed these sentiments in *Fox v. Vice*.

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."

*Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011).

The statements of Justices O'Connor and Kagan reflect what is happening in the legal profession as hourly billing has become increasingly unpopular and clients prefer to look at aggregate, global numbers.

As noted, and reflecting the modern trend described by two Supreme Court Justices, this Court will begin by generally reviewing this case to determine a reasonable aggregate global amount for fees. After all, this Court has dealt with this case and the attorneys involved for a significant time, has an overall sense of the suit, and has the experience to determine a reasonable fee in the context of this litigation.

Defendant requests approximately $4.6 million in fees, having already made an attempt to apportion the requested fees under the Court's Order. And, in response to the Court's concern that this case has been over-litigated, Defendant has omitted certain items from its request. Yet, given the Court's intimate familiarity with this case over its three-year course, the Court is left with the firm impression that the submitted fees, while reflecting adequate work that led to a favorable outcome for Defendant, also reflect the inefficiency of too many lawyers and not enough focus. Too often, the proper goal of a litigator to bring order out of chaos was lost, with more chaos resulting.

So, from a global, overall review, and taking into account the significant apportionment Defendant has already undertaken at the Court's direction, the Court imposes a further discount on the fees sought of around 10%, for a total award of $4.1 million, rounded. In light of all the circumstances and the Court's superior understanding of the litigation, this is the proper amount. It certainly reflects the "rough justice" that Justice Kagan says should be sought. *Fox*, 131 S.Ct. at 2216. While this is a relatively large number for an award that only covers certain patents and issues in the case, it is appropriate given the amount at stake, the complexity of the issues, and the fact that the resolution of certain issues reflected significant difficulties unnecessarily caused by Plaintiff. The Court has determined, for example, that "this litigation was at least in part motivated by Plaintiff's desire for 'payback' for Defendant's successful competition in the marketplace," that Plaintiff

failed to adequately review its own material concerning marking before filing suit, that it engaged in discovery gamesmanship to obscure such failing, and that Plaintiff engaged in "troubling" conduct concerning a petition for correction of inventorship.

Those concerns were addressed in the Court's Order determining that a partial grant of fees would be appropriate here. With the careful apportionment already performed by the Court and Defendant, the global, overall review just recited ought to suffice. Rough justice has been done. But to provide further detail, the Court now turns to a more granular analysis.

### GRANULAR FEE ANALYSIS

The Court ruled that Defendant was entitled to fees for the portions of the case that were attributable to the '426 and '067 Patents and the motion for reconsideration regarding the '367 Patent. Accordingly, Defendant has apportioned its fees, and seeks reimbursement of only portions of the fees. Plaintiff does not contest that apportionment, but does contest other aspects of the fees, as well as Defendant's expense request.

Defendant requests $4,661,341.55 in attorney fees and $860,911.50 in expenses, totaling $5,522,253.04. That amount excludes $250,949.03 that Defendant omitted to avoid disputes. Plaintiff objects that certain billing rates are too high, that Defendant intentionally handled the case inefficiently, that certain expenses are not awardable under section 285, and that taxable costs were requested both here and in an earlier submission to the Clerk. As calculated, itemized, etc., in the following, the attorney fees awarded shall be $4,144,847.62, and the expenses awarded shall be $478,542.06.

### 1. LEGAL STANDARD

■ "35 U.S.C. § 285 permits a district court to award reasonable attorneys' fees

in an exceptional case." *Lam, Inc. v. Johns–Manville Corp.*, 718 F.2d 1056, 1068 (Fed.Cir.1983). The "purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed.Cir. 1988) (emphasis and quotation omitted). "Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement." *Id.* at 754.

■ "The methodology of assessing a reasonable award under 35 U.S.C. § 285 is within the discretion of the district court." *Id.* (citing *Lam*, 718 F.2d at 1068). The methodology preferred by this Court is the Global Fee Analysis already undertaken. But *Lam*, written in 1983, also stated that "[i]n determining the reasonableness of the award, there must be some evidence to support the reasonableness of, *inter alia*, the billing rate charged and the number of hours expended." 718 F.2d at 1068 (internal citations omitted). In this regard, the following has been considered.

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

This framework relates primarily to contingency fee cases, and does not map perfectly on to cases—like this one—where a party has actually paid the fees. Indeed, in the contingency fee context, the Ninth Circuit has explained that "[t]he number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir.2008).

■ Yet whether a client is willing to pay a fee is not determinative of whether courts will compel an adversary to pay them. The statute only allows the award of "reasonable" attorney fees. 35 U.S.C. § 285. Reasonableness "is assessed at the discretion of the district court." *Lam*, 718 F.2d at 1068 (citing *Am. Safety Table Co. v. Schreiber*, 415 F.2d 373, 380 (2d Cir. 1969), *cert. denied*, 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970); *Purer & Co. v. Aktiebolaget Addo*, 410 F.2d 871, 880 (9th Cir.1969), *cert. denied*, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969)).

■ Beyond attorney fees, "[t]he award of expenses [is also] properly within the scope of § 285." *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed.Cir.1983); *accord Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed.Cir.2008) (citing *Mathis*, 857 F.2d at 759). But expert fees are only allowable if there is "fraud on the court or abuse of judicial process." *Amsted Ind. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed.Cir.1994).

## 2. FEES

Defendant calculated the apportionment of its fees two ways: by patent, and by issue. Defendant calculated $4,650,031.68 in attorney fees using the patent apportionment and $4,672,651.41 using the issue apportionment. Averaging the two, Defendant requests $4,661,341.55 in attorney

fees. Defendant argues that these fees are appropriate "lodestar" fees under *Hensley v. Eckerhart* because they represent "the number of hours the prevailing party reasonably expended on the litigation ... multiplied by a reasonable hourly rate."

Plaintiff argues that Defendant's requested figure is well above "reasonable," as Defendant "spared no expense in its hard-nosed pursuit of victory." Plaintiff requests several deductions from the requested amount, emphasizing the requirement that the "lodestar" figure be the product of "reasonable hours and reasonable rates."

### 2.1 Rates

■ Plaintiff objects to the rates billed by the partners and the patent agent at Sidley Austin, LLP ("Sidley"). While the Sidley partners at issue normally charge between $750 and $975 per hour, these rates were often discounted. Thus, the actual average rate charged by the Sidley partners was $768.06 per hour. Based on the Court's knowledge of local billing rates, the Sidley partner rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and are thus reasonable. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The reasonableness of the challenged rates is also supported by the billing rate reports submitted by the parties. *See, e.g., Mathis*, 857 F.2d at 755–56 (relying on billing survey data). The Valeo Hourly Rates Database for Los Angeles and Orange county shows that intellectual property partners at major law firms bill in the range of approximately $600 to $1,100 per hour. In the National Law Journal report of the "Priciest Law Firms," average partner rates range from

$715 to $1,055 per hour. The challenged rates are on the lower side of that "pricey" range, and Defendant, in its business judgment, apparently believed that the case was important and complex enough to warrant those rates. In the American Intellectual Property Law Association ("AIPLA") survey, the average billing rate of full-time partners in private firms with over 150 attorneys was $690 per hour, and $800 per hour in the third quartile.

All the surveys cited are relevant. *See Banas v. Volcano Corp.*, 47 F.Supp.3d 957, 965–66 (N.D.Cal.2014) (finding $1,095 a "reasonable rate" using the Valeo database). In sum, the rates charged by the Sidley partners were in line with those charged at similar firms.

■ Plaintiff also challenges the rates billed by Sidley patent agent Ferenc Pazmandi, which increased over the course of the case from $575 per hour to $720 per hour. After discounts, his average rate here was $693.91 per hour. The AIPLA survey shows a third quartile rate of $266 per hour for patent agents at large firms, significantly lower than Pazmandi's rate. No survey evidence has been provided supporting a rate near $693.91 per hour for a patent agent. Defendant argues that the AIPLA survey "includes only three respondents from the 'Other West' region," and that "from a technical standpoint, Dr. Pazmandi's patent litigation work experience exceeds that of most mid-level associates." Defendant cites no authority supporting rates for patent agents similar to Pazmandi's rate.

Thus, the Court will award fees for Pazmandi's work at the rate of $323 per hour, the highest rate for a patent agent in the AIPLA survey, resulting in a reduction of $92,537.01 (after apportionment).

### 2.2 Hours

■ Defendant seeks fees for the work of four law firms in this case. Defendant first retained Ostrolenk Faber, LLP ("Ostrolenk") as lead counsel, with Christie, Parker, & Hale, LLP ("CPH") serving as local counsel. The local counsel laterally moved with Mr. Brookey from CPH to Tucker Ellis, LLP ("Tucker"). Defendant added Sidley to the case before the summary judgment phase. Plaintiff requests a blanket 30% reduction in hours billed due to the resulting inefficiencies, noting that the Court has acknowledged that this case was "overlitigated," and the calculation of "reasonable attorneys' fees" should reflect this fact. Defendant responds that retaining multiple law firms is common in complex litigation, as is having multiple attorneys attend major depositions, and that the practice can even "enhance[ ] efficiency." (Quoting *Howes v. Med. Components, Inc.*, 761 F.Supp. 1193, 1199 (E.D.Pa.1990).)

The number of firms and lawyers working on this case was excessive and inefficient. Plaintiff points out that 56 people billed time to Defendant's case, and that multiple attorneys routinely attended depositions and hearings. Concerning staffing excesses, the Court previously noted to those in the courtroom, "I must say to the defense, six lawyers, I assume some of them coming from out of state, in a $20 million case, that's a lot of lawyers." (Rep.'s Tr. of Mar. 24, 2014 Mot. for Summary J.)

The Court's review of the billing records reveals some duplication of work due to the number of attorneys and firms staffed to the case. The Court will adjust the hours sought. *See IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 2005 U.S. Dist. LEXIS 32621 at *4–6 (E.D. Va. June 28, 2005) (reducing fees by 20% "when multiple attorneys billed for tasks that could have been accomplished more efficiently").

Of the 16,731.7 hours Defendant's lawyers billed to this case, 549.55 were billed

by attorneys who spent less than 100 hours on the matter. Because such transient involvement is inefficient, the Court excludes those hours in the following chart (amounts already omitted by Defendant are not included in this chart).

| Biller | Firm | Hours | Amount |
|---|---|---|---|
| ACC | Ostrolenk | 43.6 | $18,094.00 |
| AM | CPH | 20.7 | $5,175.00 |
| AYM | Ostrolenk | 43.2 | $10,648.80 |
| DS | CPH | 19.5 | $5,325.00 |
| DXS | Ostrolenk | 18.1 | $4,461.65 |
| EZA | CPH | 58.8 | $17,439.48 |
| GXB | Ostrolenk | 78.6 | $29,824.00 |
| JYK | Ostrolenk | 31.4 | $8,412.90 |
| KWK | Ostrolenk | 61.4 | $15,617.95 |
| KXS | Ostrolenk | 5.5 | $2,057.00 |
| LCD | Ostrolenk | 5.5 | $2,970.00 |
| MHF | Ostrolenk | 6 | $2,250.00 |
| MP | Ostrolenk | 37.75 | $19,252.50 |
| MPH | Ostrolenk | 3.8 | $1,140.00 |
| SJQ | Ostrolenk | 7.3 | $3,029.50 |
| SPM | Ostrolenk | 53.6 | $13,936.00 |
| SSD | CPH / Ost. | 49.5 | $14,473.43 |
| TMS | CPH | 1.5 | $307.50 |
| Trela | Sidley | 3.8 | $3,391.50 |
| Total before Apportionment: | | 549.55 | $177,806.20 |
| Apportioned Total: | | $116,341.50 | |

The Court therefore reduces the fees here by $116,341.50.

The Court next makes an adjustment to compensate for general overstaffing. There were too many lawyers working on the same task, too many lawyers coming up to speed, and too many lawyers attending depositions and hearings. The Court will apply a 10% reduction to fees incurred after Sidley joined the case on Nov. 27, 2013. *See Action Star Enter. v. Kaijet Tech. Int'l,* No. CV–12–08074 BRO at *11 (C.D.Cal. Jul. 7, 2014) (applying a 15% across-the-board reduction "in order to compensate for any inefficiencies of litiga-

tion"). This is a further reduction of $307,615.41.

## 2.3 Block Billing

Plaintiff objects to the "block billing" used by Defendant, arguing that it obscured inefficiencies by making it difficult to ascertain how much time was spent on a given task. The term "block billing," as used by Plaintiff, means "each lawyer or other timekeeper providing a single description of a day's worth of activities and a total number of hours for that day." Plaintiff cites, as an example and with the following emphasis, a March 20, 2014 billing entry made by "MFH" at Ostrolenk.

Correspondence with C. Park regarding J. Chang and J. Sienkiewicz deposition designations; review F.R. Evid 615 and related cases regarding C. Park as URC's corporate designation for purposes of attending hearing and trial; teleconference and correspondence with T. Chandler regarding P. Arling deposition designations; review Court's Order on UEI's ex parte motion; conference with D. Miro regarding same; review case documents regarding use at trial; review URC's Trial Exhibit List; review Fed. R. Civ. P. Rule 32 regarding use of depositions at trial; *meeting with Ostrolenk Litigation team regarding trial exhibits; correspondence with T. Donahey and Sidley Team regarding finalizing witness and exhibit lists for exchange with UEI*; exhibit list for exchange with UEI; *review Sidley's revised drafts of witness list and exhibit list; correspondence with litigation team and C. Park regarding same; review Sidley's revisions to deposition designations; meeting with K. Barkaus and correspondence with C. Chi regarding same*; correspondence with C. Park and C. Chi regarding witness list

This entry is representative of commonly used billing practices. Indeed, this entry is more detailed than the Court might

have expected. It appears that Plaintiff seeks "task billing," allocating every moment of attorney time to a plethora of specific tasks. That level of specificity improperly creates "a pretense of mathematical precision" criticized by Justice O'Connor. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 189. It also improperly makes trial courts "green-eyeshade accountants" seeking accounting precision rather than rough justice. *Fox*, 131 S.Ct. at 2216. It is inefficient.

Plaintiff argues that the underlined portions show time spent coordinating between Ostrolenk and Sidley, but that the billing format makes it impossible to tell how many of these hours were devoted to this task. Further, Plaintiff argues that some entries were so vague as to make the tasks accomplished unascertainable, like billing hundreds of hours for "general litigation support."

True, Courts have reduced fees due to block billing. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir.2007). But as noted, the billing specificity Plaintiff requests is not necessary. Indeed, a court may include amounts "block-billed" without a reduction "because counsel 'is not required to record in great detail how each minute of his time was expended.'" *Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co., Ltd.*, 668 F.3d 677, 690 (9th Cir.2012) (quoting *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933). Here, Defendant has endeavored to apportion and describe billed hours appropriately, and the Court has been able to reduce the hours sought to account for inefficiency. No further reduction for billing specificity is required.

## 2.4 Conclusion—Adjustment to Fees

The court deducts $92,537.01 for the patent agent billing rate, $116,341.50 billed by lawyers with transient involvement, and $307,615.41 for general overstaffing, for a

total fee reduction of $516,493.93. This leaves an award for fees of $4,144,847.62.

### 3. EXPENSES

Defendant also requests an award of $860,911.50 in expenses, which it apportioned in the same manner as the attorney fees. (Dkt. No. 502 at 16–18.) Generally, expenses may be awarded under section 285. *Cent. Soya,* 723 F.2d at 1578 ("[W]e conclude that the award of expenses was properly within the scope of § 285."). After *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* — U.S. —, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014), district courts have continued to recognize that non-expert, non-taxable costs are compensable under section 285. *See Kilopass Tech., Inc. v. Sidense Corp.,* 82 F.Supp.3d 1154, 1174–75 (N.D.Cal.2015) (awarding non-taxable travel and lodging expenses and document delivery fees, but not expert fees). The Court first turns to expert fees, which are treated differently than other expenses.

### 3.1 Expert Fees

■ Expert witness fees are only awardable here if there is "fraud on the court or an abuse of the judicial process." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 379 (Fed.Cir.1994); *see also Kilopass Tech., Inc.,* 82 F.Supp.3d at 1174–75 (continuing to cite *Amsted Indus., Inc.* post-*Octane* for the proposition that "[i]n the absence of fraud or abuse, a court may not award expert fees above the 28 U.S.C. § 1821 statutory cap"); *cf. Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.,* 2015 WL 1573325, *5, 2015 U.S. Dist. LEXIS 46569 *11 (S.D.N.Y. Apr. 9, 2015) (citing *Amsted Indus., Inc.* and stating that expert fees are not authorized under section 285). This limitation on the Court's ability to make prevailing parties whole in "regular" exceptional cases flows from the Supreme Court's decision in *West Virginia Univ. Hosps., Inc.*

*v. Casey,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). There, the Court held that 42 U.S.C. section 1988, which provided that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," did not extend to expert fees beyond the paltry allowance of 28 U.S.C. section 1821(b). *Id.* at 85, 111 S.Ct. 1138 n. 1. While Congress moved quickly to fill that gap in 42 U.S.C. section 1988, it did not do so for 35 U.S.C. section 285. *Amsted,* 23 F.3d at 376; *see also* McDonald & Doscotch, *Why Aren't Expert Fees Recoverable In Patent Cases? Correcting an Anomaly in the Patent Fee Statutes,* 84 J. Pat. & Trademark Off. Soc'y 255 (2002) (proposing a legislative fix). A statutory amendment could allow the courts to further deter inappropriate patent litigation without micro-managing cases, but there has been none.

■ Of course, the Court may award expert witness fees as a sanction under the Court's inherent powers. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,* 549 F.3d 1381, 1391 (Fed.Cir.2008). But the circumstances outlined in *Amsted* must be present to award such sanctions. To do otherwise would fail to honor the perhaps unintended distinctions in the United States Code identified in *West Virginia University Hospitals.* "Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power." *MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907, 921 (Fed.Cir.2012). And while the Court held that this case was exceptional, it did not conclude that it was "*Amsted* exceptional." *See Amsted,* 23 F.3d at 378 (noting that a court may invoke its inherent powers if "fraud has been practiced upon it, or that the very temple of justice has been defiled") (quoting *Chambers v.*

*NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)).

Accordingly, the Court does not award expert fees in this case. This reduces the expenses sought by $342,958.27 (after apportionment).

### 3.2 Other Expenses

Plaintiff argues that travel expenses were inflated by routinely sending multiple lawyers across the country, and requests a 30% reduction to this expense of $160,543.87. Defendant responds that there is no basis to exclude travel costs because "URC is based in New York and depositions of its employees took place in New York. By retaining the New York-based Ostrolenk firm, URC actually reduced its travel costs."

The Court has noted that an excessive number of attorneys traveled across the country to appear in court. Because the problem of excessive travel costs largely is attributable to the problem of overstaffing, the same 10% reduction will be applied here.

Finally, Plaintiff argues that $195,149.69 in costs included in Defendant's calculation are taxable costs already claimed in Defendant's Bill of Costs submitted to the Clerk. Because the Bill of Costs is still pending and, according to Defendant, "it is unclear what costs the Clerk will find taxable," Defendant responds that it does not seek to "double dip" on taxable costs. Because the Court here awards costs and expenses under section 285, the question of what costs are taxable can be bypassed. The Court awards the entire amount requested minus the 10% adjustment. Defendant shall withdraw its application to the Clerk for costs.

In sum, the Court will deduct 10% of all allowable apportioned expenses incurred on or after November 27, 2013, which is a reduction of $39,411.17.

### 3.3 Conclusion—Adjustment to Expenses

The Court awards expenses of $478,542.06. The Court notes that this amount for non-expert expenses is about 10% of the fee award, which is typical.

## 4. AMOUNTS NOT TIMELY REQUESTED

The Court ordered that "Defendant shall file all it deems necessary to support its fees no later than" 14 days after the Fee Order issued.

Defendants filed their supplemental submission concerning fees by the deadline, including all of the fees and expenses discussed in Sections 2 and 3. Defendants included a footnote purporting to reserve the right to *supplement* the *supplement* with "all fees and expenses incurred up to the date of March 24, 2015, the date this fee submission was submitted, some of which have not been invoiced."

In its second supplemental submission regarding attorney fees, Defendant requested an additional $192,605.29 in fees and expenses. Plaintiff objects to these additional amounts as not complying with the Court's Order that Defendant file "all it deems necessary to support its fees" by the deadline specified.

The Court denies these second supplemental fees for two reasons. First, their late submission failed to comply with the Court's Order. Second, the amount sought is clearly unreasonable for three weeks of work that occurred not only after Defendant won the case, but after Defendant had already briefed the exceptional case issue. While the Court agrees that Defendant is likely correct in arguing that it did not incur excessive fees on the hope of recovering fees, the discipline imposed by paying out of pocket disappears once a

party knows that the other party is on the hook. That may be what happened here. But whatever the reason for the large post-victory bill, the Court declines to award more.

## 5. CONCLUSION

Defendant timely requested $4,661,341.55 in attorney fees and $860,911.50 in expenses. The Court makes the following adjustments:

| | |
|---|---|
| Attorney fees requested: | $4,661.341.55 |
| Patent agent rate reduction: | ($92,537.01) |
| Transient involvement reduction: | ($116,341.50) |
| Remaining fees before inefficiency reduction: | $4,452,463.03 |
| Inefficiency reduction (10% post 11/26/13) | ($307,615.41) |
| **Total fees granted:** | **$4,144,847.62** |
| Expenses requested: | $860,911.50 |
| Expert fee reduction: | ($342,958.27) |
| Inefficiency reduction (10% post 11/26/13) | ($39,411.17) |
| **Total expenses granted:** | **$478,542.06** |
| **Total award (fees and expenses):** | **$4,623,389.68** |

## DISPOSITION

The Court awards Defendant $4,144,847.62 in attorney fees and $478,542.06 in expenses. The total award is thus $4,623,389.68.

Defendant shall withdraw its application to the Clerk to tax costs.

IT IS SO ORDERED.